UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No. 22-14810-LMI

274 ATLANTIC ISLES, LLC,                                  Chapter 11

      Debtor.

_____/

ERIC R. SCHWARTZ, AS TRUSTEE                              Adv. Pro. No.: 22-01199-LMI
UTA dated 3/4/2019,

      Plaintiff,

v.

ISAAC HALWANI; GISELLE HALWANI;
274 ATLANTIC ISLES, LLC, a Delaware
limited liability company; JOHN DOE and
JANE DOE, unknown parties in possession, if any,

      Defendants.

_____/

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

Defendant, 274 ATLANTIC ISLES, LLC, pursuant to Bankruptcy Rules 8001 and 8003

of the Federal Rules of Bankruptcy Procedure, Local Rule 8003-1, and 28 U.S.C. § 158(a), gives

notice of its appeal to the United States District Court for the Southern District of Florida of the:

    (1) *Order Granting Plaintiff/Counter Defendant's Cross-Motion for Summary Judgment and Denying Defendant/Counter Plaintiff's Motion for Summary Judgment* [ECF No. 167] (the "<u>Opinion</u>") dated July 18, 2025; and

    (2) *Final Judgment Against Defendant/Counterclaim-Plaintiff 274 Atlantic Isles, LLC* [ECF No. 169] (the "<u>Judgment</u>") dated July 28, 2025.

The Opinion and the Judgment are attached hereto as **Exhibit 1** and **2**, respectively.

The names of all parties to the Opinion and the Judgment appealed from and the names, addresses, and telephone numbers of their respective attorneys, if applicable, are as follows:

(1) Party:    274 Atlantic Isles, LLC

   Counsel:   Eric D. Jacobs, Esq.
              Glenn D. Moses, Esq.
              Venable LLP
              801 Brickell Avenue, Suite 1500
              Miami, FL 33131
              Telephone: (305) 349.2300


(2) Party:    Brian M. Gaines, as Trustee UTA dated 3/4/2019

   Counsel:   Benjamin H. Brodsky, Esq.
              Brodsky Fotiu-Wojtowicz, PLLC
              44 W. Flagler Street, Suite 2200
              Miami, FL 33130
              Telephone: (305) 503.5054


Appellant, 274 Atlantic Isles, LLC, elects to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

DATED: August 1, 2025.

                              **VENABLE LLP**
                              *Attorneys for 274 Atlantic LLC*
                              801 Brickell Avenue, Suite 1500
                              Miami, Florida 33131
                              Telephone: (305) 349.2300

                              By: */s/ Eric D. Jacobs*
                                   Glenn D. Moses, Esq.
                                   Florida Bar No. 174556
                                   gmoses@venable.com
                                   Eric D. Jacobs, Esq.
                                   Florida Bar No. 85992
                                   ejacobs@venable.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on August 1, 2025, a true copy of the foregoing has been furnished via electronic mail by virtue of the Court's CM/ECF System to:

- Ido J Alexander
  ija@alignxlaw.com, aslawpllc@ecf.courtdrive.com;alignx@ecf.courtdrive.com

- David Blansky
  dblansky@dunnlawpa.com, rbasnueva@dunnlawpa.com;
  tudani@dunnlawpa.com;lrodriguez@dunnlawpa.com

- Benjamin H Brodsky
  bbrodsky@bfwlegal.com, docketing@bfwlegal.com

- Michael P Dunn
  michael.dunn@dunnlawpa.com, rbasnueva@dunnlawpa.com; acastro@dunnlawpa.com;
  tudani@dunnlawpa.com; lrodriguez@dunnlawpa.com

- Meaghan E Murphy
  mmurphy@melandbudwick.com, ltannenbaum@melandbudwick.com;
  mrbnefs@melandbudwick.com; ltannenbaum@ecf.courtdrive.com;
  phornia@ecf.courtdrive.com; mmurphy@ecf.courtdrive.com

By: */s/ Eric D. Jacobs*
    Glenn D. Moses, Esq.
    Eric D. Jacobs, Esq.

# EXHIBIT 1

*Tagged Opinion*



**ORDERED in the Southern District of Florida on July 18, 2025.**

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                          Case No. 22-14810-LMI
274 ATLANTIC ISLES, LLC,                        Chapter 11

        Debtor.
_____/                Adv. Pro. No.: 22-01199-LMI
ERIC R. SCHWARTZ, as Trustee UTA
dated 3/4/2019,

        Plaintiff,

v.

ISAAC HALWANI; GISELLE HALWANI;
274 ATLANTIC ISLES, LLC, a Delaware
Limited Liability Company; John Doe;
and
Jane Doe, unknown parties in
possession, if
any,

        Defendants.
_____/

**ORDER GRANTING PLAINTIFF/COUNTERCLAIM DEFENDANT'S CROSS-
MOTION FOR SUMMARY JUDGMENT AND DENYING**

## DEFENDANT/COUNTERCLAIM PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter came before the Court on the Motion for Summary Judgment (ECF #148) (the "Motion") filed by Defendant/Counterclaim Plaintiff 274 Atlantic Isles, LLC ("274 Atlantic") and the Cross-Motion for Summary Judgment (ECF #154) (the "Cross-Motion") filed by Plaintiff/Counterclaim Defendant Brian M. Gaines, as Trustee UTA dated 3/4/2019 (the "Trustee" or "Lender"), the Response to the Cross-Motion and Reply in Support of the Motion (ECF #158) filed by 274 Atlantic, and the Reply in Support of the Cross-Motion (ECF #163) filed by the Trustee. The Court heard argument from counsel at a hearing on the Motion and Cross-Motion on May 13, 2025 at 1:30 p.m. (the "Hearing"). For the reasons stated below, the Trustee's Cross-Motion is GRANTED and 274 Atlantic's Motion is DENIED.

### FACTS AND PROCEDURAL HISTORY

This case revolves around the real property located at 274 Atlantic Avenue, Sunny Isles Beach, Florida 33160 (the "Property"). On April 5, 2021, the Trustee recorded a deed in lieu of foreclosure (the "Deed"), transferring title to the Property from 274 Atlantic to the Trustee. The issue the Court must determine is whether the recording of the Deed was a constructive fraudulent transfer entitling 274 Atlantic to recover either the Property, or the value of the Property at the time of the transfer, pursuant to 11 U.S.C. §§548(a)(1)(B) and 550(a).

On May 25, 2021, the Trustee filed the State Court Action (defined below) to eject 274 Atlantic, Isaac Halwani ("Mr. Halwani"), and Giselle Halwani ("Ms. Halwani" and, collectively, the "Halwanis") from the Property. During the

2

pendency of the State Court Action, on June 22, 2022, 274 Atlantic filed a petition for bankruptcy before this Court in Case No. 22-14810-LMI (the "Petition Date"). On June 29, 2022, 274 Atlantic removed the State Court Action to this Court (ECF #1).

By order dated March 10, 2023 (ECF #56), the Court granted summary judgment in favor of the Trustee on all then-pending counterclaims brought by 274 Atlantic. *Schwartz v. Halwani (In re 274 Atl. Isles, LLC),* 651 B.R. 319 (Bankr. S.D. Fla. 2023). 274 Atlantic sought leave to file a Fourth Amended Counterclaim to reallege one of its counterclaims, Count X, for avoidance of the recording of the Deed as a constructively fraudulent transfer under sections 548(a)(1)(B) and 550(a) (ECF #58). The Court granted leave to amend on April 27, 2023 (ECF #95). The Trustee filed his Answer and Affirmative Defenses to the Fourth Amended Counterclaim (ECF #98)  (the "Answer") on May 2, 2023.

Thereafter, unexpectedly, counsel to Valerie Kabrita ("Ms. Kabrita") and Juan Pablo Verdiquio ("Mr. Verdiquio") appeared in Court announcing they were, respectively, the sole member and manager of 274 Atlantic, and not Mr. Halwani. Ms. Kabrita and Mr. Verdiquio filed an adversary proceeding against 274 Atlantic, Isaac Halwani, and Giselle Halwani[1].  Ms. Kabrita and Mr. Verdiquio sought a declaration that the Halwanis held no membership interest in 274 Atlantic, that Isaac Halwani was not the manager of 274 Atlantic and had no authority to act on its behalf, including by providing the Deed to the Trustee or filing the petition for bankruptcy on 274 Atlantic's behalf.  On January 3, 2025, the Court approved a settlement agreement between Mr. Verdiquio, Ms. Kabrita,

---

[1] Case No. 24-1005-LMI.

3

and the Halwanis' Chapter 7 Trustee, pursuant to which, among other things, Mr. Verdiquio and Ms. Kabrita were allowed to file certain proofs of claim in the Halwanis' and 274 Atlantic's bankruptcy cases in exchange for waiving any challenge to the authority of the Halwanis to file the 274 Atlantic bankruptcy case.

Following the resolution of Ms. Kabrita and Mr. Verdiquio's claims, the Trustee and 274 Atlantic filed their pending cross-motions for summary judgment on 274 Atlantic's sole remaining counterclaim, Count X, for avoidance of the recording of the Deed as a constructively fraudulent transfer.

Based upon the pending Fourth Amended Counterclaim, the Answer, the Motion, and the Cross-Motion, the following facts are undisputed, except as otherwise noted:

A.     274 Atlantic was formed either before or after Ms. Kabrita purchased the Property; Ms. Kabrita was the sole member of 274 Atlantic.  At or about the same time,  Mr. Verdiquio agreed to invest in developing the Property, eventually becoming the manager of 274 Atlantic.

B.     274 Atlantic acquired title to the Property on or about January 22, 2016 by virtue of a warranty deed that was recorded on January 25, 2016 in Official Records Book 29935, Page 1668, of the Public Records of Miami-Dade County, Florida.

C.     Ms. Kabrita was the only member of 274 Atlantic at the time it acquired the Property. In his deposition, Mr. Verdiquio testified that he had a partnership with Ms. Kabrita with respect to the development of the Property. Mr. Verdiquio then entered into a contract in his name with a construction

company to build a house on the Property. In accordance with that contract, during 2017 and 2018, Mr. Verdiquio spent $1.5 million toward the construction of the house. Mr. Verdiquio and Ms. Kabrita expected that, once the house was sold, Mr. Verdiquio would receive the return of his investment, Ms. Kabrita would receive the return of her investment (the approximate $1.5 million that she paid for the Property), and they would split anything left over—i.e., the profits—on a 50/50 basis.

D.     At some point during this time period Isaac Halwani took possession of the Property; according to a complaint filed by Ms. Kabrita and Mr. Verdiquio, Mr. Halwani stated he would rent, and ultimately buy the Property. Mr. Halwani was a personal friend of Ms. Kabrita and her husband and someone with whom Mr. Verdiquio did business.

E.     There is a dispute whether Ms. Kabrita transferred her membership interest in 274 Atlantic to Mr. Halwani, or whether he just unilaterally took over as the sole member of 274 Atlantic by fraudulent means.[2] There is no question, however, that by early 2019 Mr. Halwani was holding out himself and his wife Giselle Halwani as the members of 274 Atlantic.

F.     On March 7, 2019, 274 Atlantic, through Mr. Halwani, encumbered the Property with a first mortgage in favor of Lender in the original amount of $1,500,000.00, which mortgage was recorded on March 12, 2019 in Official Records Book 31360, Page 4924, of the Public Records of Miami-Dade County, Florida (the "First Mortgage").

---

[2]  While Mr. Halwani claimed that Ms. Kabrita transferred her membership interest in 274 Atlantic to him, the complaint filed by Ms. Kabrita claimed that any such claim was false, and that an alleged email regarding the transfer was not sent by her or her husband.

G.     TCB & GSD Consulting LLC, a Florida limited liability company ("TCB"), a company owned and controlled by Mr. Halwani, executed a promissory note dated March 7, 2019 in the original amount of $1,500,000.00 (the "First Note"). Repayment of the First Note was secured by the First Mortgage. 274 Atlantic and the Halwanis executed guaranties of the First Note agreeing to be jointly and severally liable for all amounts coming due under the First Note (the "First Note Guaranty").

H.     On October 11, 2019, 274 Atlantic further encumbered the Property with a second mortgage in the original amount of $525,000.00, which mortgage was recorded on October 24, 2019 in Official Records Book 31661, Page 2766, of the Public Records of Miami-Dade County, Florida (the "Second Mortgage").

I.     Eric R. Schwartz, as Trustee UTA dated October 10, 2019 ("Second Lender") is the named lender under the Second Mortgage; however, Brian M. Gaines replaced Schwartz as the trustee of the Second Lender.

J.     Frozen Wheels, LLC, a Florida limited liability company ("Frozen Wheels"), wholly owned and controlled by Mr. Halwani,  executed a promissory note in favor of the Second Lender dated October 11, 2019 in the original amount of $525,000.00 (the "Second Note").

K.     Repayment of the Second Note is secured by the Second Mortgage. Additionally, in connection with the Second Note, 274 Atlantic executed and delivered to Second Lender a Continuing Guaranty (ECF #23-21) (the "Second Note Guaranty") obligating 274 Atlantic to the amounts due under the Second Note. The Second Note Guaranty includes the following terms in ¶ 3 and ¶ 4:

> 3.     In the event Borrower [Frozen Wheels] fails to perform its covenants, agreements and undertakings as provided in any Loan

Document or otherwise defaults under any of the Loan Documents, Lender shall first foreclose the Mortgage in the manner provided by applicable law and shall first proceed against the Borrower and exhaust any security held by Borrower and all remedies available to Lender against Borrower prior to proceeding against Guarantor [274 Atlantic]. Lender shall apply all foreclosure proceeds to the debt secured by the Loan Documents prior to seeking recovery against the Guarantor.

4.      The obligations of the undersigned [274 Atlantic] hereunder are independent of the obligations of Borrower, and a separate action or actions for payment, damages or performance may be brought and prosecuted against the undersigned, or any one of them, whether or not an action is brought against Borrower or the security for Borrower's obligations, and whether or not Borrower be joined in any such action or actions, and whether or not notice be given or demand be made upon Borrower.

L.      The First Note was modified by that certain instrument entitled Modified and Consolidated Promissory Note dated September 29, 2020 which included a loan advance of $500,001.00, thereby increasing the principal balance of the First Note from $1,500,000.00 to $2,000,001.00 (the "Modified First Note"). The First Mortgage was modified by instrument entitled Future Advance Receipt and Modification of Promissory Note and Mortgage and Security Agreement dated September 29, 2020 that was recorded on October 6, 2020 in Official Records Book 32128, Page 4624, of the Public Records of Miami-Dade County, Florida (the "Modified First Mortgage"). 274 Atlantic and the Halwanis executed guaranties of the Modified First Note and the Modified First Mortgage.

M.      TCB, 274 Atlantic, and the Halwanis executed an instrument entitled Forbearance Agreement (the "Forbearance Agreement") bearing an effective date of December 18, 2020, after the Lender alleged that TCB as Borrower, and 274 Atlantic and the Halwanis as Guarantors, were in default with respect to their obligations under the Modified First Note. According to the

Forbearance Agreement recitals, the Lender intended to file a foreclosure action.

N.      Pursuant to the Forbearance Agreement, on December 29, 2020 Mr. Halwani, on behalf of 274 Atlantic, executed a deed-in-lieu of foreclosure (the "Deed") for the Property which named Lender as the grantee. The Deed was held in escrow by Lender's attorneys, Weitz & Schwartz, P.A. ("Lender's Counsel"), and would be voided by Lender's Counsel and returned to 274 Atlantic in the event that the monetary obligations stipulated under the Forbearance Agreement were timely performed.

O.      After Lender declared a default under the Forbearance Agreement, the Deed was recorded by Lender's Counsel on April 5, 2021 in Official Records Book 32430, Page 4114, of the Public Records of Miami-Dade County, Florida.

P.      The Forbearance Agreement and the Deed pertain solely to the First Note and First Mortgage, as amended by the Modified First Note, the Corrected Modified First Note, and the Modified First Mortgage. The Forbearance Agreement and the Deed do not reference the Second Note or the Second Mortgage.

Q.      At the time the Deed was recorded, the principal amount of the debt owed under the First Note and the First Mortgage was $2,000,001.00. At the time the Deed was recorded, the principal amount of the debt owed under the Second Note and the Second Mortgage was $721,198.43. At the time the Deed was recorded the Property was worth approximately $6,250,000.00.[3]

---

[3] 274 Atlantic has offered the Declaration of Karim Sabet (ECF #101, Ex. 3) (the "Broker Associate Declaration"), a licensed broker associate, in which Mr. Sabet testifies that "based on his research," the value of the Property in December 2020—the date on or about which the Deed was executed—was between $5,750,000.00 and $6,000,000.00. Mr. Sabet also testified that, "based on his research," the value of the Property in April 2021—the date on which the Realtor

R.     On May 25, 2021, Lender filed a one count complaint for ejectment against 274 Atlantic and the Halwanis in Case No. 2021-012322-CA-01 in the Circuit Court of Miami-Dade County, Florida (the "State Court Action").

S.     On November 11, 2021, counsel for 274 Atlantic, in its capacity as mortgagor, made a statutory demand under Fla. Stat. §701.04 to Lender for an estoppel letter relative to the First Mortgage, as modified by the Modified First Mortgage. On November 26, 2021, Lender provided the Estoppel Certificate as to the First Mortgage confirming that pursuant to the Deed there is no outstanding indebtedness related to the First Mortgage and that, upon resolution of the State Court Action in favor of Lender, a satisfaction of the First Mortgage will be recorded in the public records.

T.     On November 11, 2021, counsel for 274 Atlantic, in its capacity as mortgagor, made a statutory demand under Fla. Stat. §701.04 to Second Lender for an estoppel letter relative to the Second Mortgage. On November 26, 2021, Second Lender provided a separate Estoppel Certificate as to the Second Mortgage confirming a payoff in the amount of $676,371.25, including principal, past due interest, legal fees, and per diem interest, and Second Lender further provided wire instructions for the payment of said amounts due under the Second Mortgage (the "Second Mortgage Estoppel Letter").

## STANDARD OF REVIEW

"Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules 7056 and 9014 of the Federal Rules of Bankruptcy

---

Declaration was signed—was between $6,250,000.00 and $6,400,000.00. *Id.* 274 Atlantic agreed to be bound by the lower amount in the Broker Associate Declaration for the purposes of this Court's ruling on the Motion and Cross-Motion.

Procedure is appropriate when there exists no genuine issue of material fact and a decision may be rendered as a matter of law." *In re Ortega T.*, 573 B.R. 284, 290 (Bankr. S.D. Fla. 2017). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990) (citation omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)). At the summary judgment stage, the Court will not weigh the evidence or find facts; rather, the Court determines only whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). If there are no material facts in dispute, and only a purely legal question

remains to be decided by the Court, then granting summary judgment is appropriate. *Anderson*, 477 U.S. at 247–48.

In Count X of the counterclaim, 274 Atlantic seeks avoidance and recovery of a fraudulent transfer under sections 548(a)(1)(B) and 550(a).[4] 274 Atlantic argues that (a) it received less than reasonably equivalent value for the recording of the Deed by Lender's Counsel; and (b) at the time the Deed was recorded 274 Atlantic (i) was insolvent or became insolvent as a result; (ii) was engaged or was about to be engaged in a business or transaction for which its remaining property was unreasonably small capital; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay such as debts matured. This Court has already determined that for the purposes of a fraudulent transfer analysis under Florida law and section 548(a)(1), the transfer of real property occurs upon the recording of a deed. *See Schwartz,* 651 B.R. at 330-31. As agreed to by the parties at the Hearing, the remaining issues this Court must determine are (a) whether 274 Atlantic was insolvent, or became insolvent, as a result of the transfer of the Property; and (b) whether 274 Atlantic received reasonably equivalent value from the Lender in support of the transfer of the Property.[5]

Both parties agree that there are no genuine issues of material fact and that the Court need only decide questions of law.

---

[4] Pursuant to section 548(a)(1)(B), "the trustee may avoid any *transfer* . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor. . . if the debtor received less than a reasonably equivalent value in exchange for such transfer . . . and [the debtor] was [either] insolvent on the date that such transfer was made . . . or [the debtor] was left with unreasonably small capital." 11 U.S.C. §548(a)(1)(B) (emphasis added). Pursuant to section 550(a), where a transfer is avoided under section 548 the bankruptcy trustee may recover the property transferred for the benefit of the bankruptcy estate. 11 U.S.C. §550(a).

[5] Because the Court finds that the transfer of the Property by recording the Deed did not render 274 Atlantic insolvent, the Court does not need to address the issue of reasonably equivalent value.

**ANALYSIS**

"A debtor is insolvent if the sum of its debts exceeds its assets at a fair valuation." *Schwartz,* 651 B.R. at 331. The Bankruptcy Code defines "insolvent" as:

> (A) with reference to an entity other a partnership and a municipality, financial condition such that the sum such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—
>
> > (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
> >
> > (ii) property that may be exempted from property of the estate under section 522 of this title.

11 U.S.C. §101(32)(A). "The issue then is whether the fair value of a debtor's debts exceeds the fair value of the debtor's assets." *In re Am.-CV Station Grp. Inc.,* 666 B.R. 395, 405 (Bankr. S.D. Fla. 2024).

Until the Deed was actually recorded, 274 Atlantic had one asset – the Property. Thus, there is no dispute that 274 Atlantic no longer had any assets after the Deed was recorded on April 5, 2021. The issue is whether, at the time the Deed was recorded, 274 Atlantic had any debts. The parties disagree as to what debts were owed by 274 Atlantic on April 5, 2021. Neither party disputes that until the Deed was recorded, 274 Atlantic was liable to the Lender with respect to the First Note Guaranty and the First Mortgage as modified, which obligation was satisfied upon the recording of the Deed,[6] as well as with respect

---

[6] 274 Atlantic initially argued in its Motion that the First Note Guaranty was still a liability after the Deed was recorded, but it appears to have abandoned that argument in its subsequent briefing and at the Hearing on the Motion and Cross-Motion. Regardless, the recording of the Deed extinguished the debt described in the Deed; that is the legal effect of a deed-in-lieu of foreclosure. The Court already determined this precise issue in its order granting summary judgment in favor of the Trustee on 274 Atlantic's other claims (ECF #56). *Schwartz,* 651 B.R. at

to the contingent liability represented by the Second Note Guaranty and the Second Mortgage. 274 Atlantic contends that, after the Deed was recorded, it had two liabilities: (a) a potential claim by Mr. Verdiquio against 274 Atlantic for unjust enrichment based on the $1.5 million he contributed to his partnership with Ms. Kabrita (the "Verdiquio Claim"); and (b) the Second Note Guaranty. The Trustee argues that the Verdiquio Claim was not a liability of 274 Atlantic, but rather, a capital contribution to his general partnership with Ms. Kabrita, and the Second Note Guaranty was a contingent liability that should be valued at zero.

The Court will turn first to the Verdiquio Claim. It is undisputed that Mr. Verdiquio and Ms. Kabrita formed a partnership for the development of the Property; Ms. Kabrita contributed the Property and Mr. Verdiquio contributed the funds to construct the home on the Property. Upon the sale of the Property, each was entitled to a return of their contributions—Ms. Kabrita would get back the money she spent purchasing the Property through 274 Atlantic, and Mr. Verdiquio would get back the money he spent constructing the home, and they would then split any profits 50/50.

Ms. Kabrita, her husband, Rani Zantout, who acted as her agent in many respects, as well as Mr. Verdiquio, all described their agreement to develop the Property as a partnership. *Schilpp v. Schilpp*, 380 So. 2d 573, 575 (Fla. 1st DCA1980) ("the intention of the parties is a primary consideration and the most

---

328 ("the undisputed facts show that the debt secured by the First Mortgage has been extinguished, as evidenced by the Estoppel Certificate given by the Lender to 274 LLC on November 26, 2021, which confirmed that the debt secured by the First Mortgage was extinguished even though the First Mortgage remains in place.").

important test as between the parties themselves in determining whether there is a partnership"). Moreover, the agreement between Mr. Verdiquio and Ms. Kabrita to contribute essentially equal amounts to the purchase and development of the Property, and then to split the profits after the return of their respective contributions makes their arrangement presumptively a partnership as a matter of law. Fla. Stat. §620.8202(c). Consequently, the financial investment of each of the partners, especially in the absence of specific arrangements to the contrary, constituted their contributions to the partnership.[7]

274 Atlantic argues that, even if Mr. Verdiquio's expenditure of $1.5 million was a capital contribution to his partnership with Ms. Kabrita, he still had a potential claim against 274 Atlantic for unjust enrichment. However, as a matter of law, Mr. Verdiquio does not have an unjust enrichment claim against 274 Atlantic because "to prevail on an unjust enrichment claim, the plaintiff must **<u>directly</u>** confer a benefit to the defendant." *CFLB P'ship, LLC v. Diamond Blue Int'l, Inc.*, 352 So. 3d 357, 359 (Fla. 3d DCA 2022) (emphasis in original) (quoting *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017)). The facts of *Diamond Blue* are similar to those of this case. There, the plaintiffs loaned $2 million to one entity (Management), which then immediately transferred the capital to a related entity (Partnership) to develop a hotel property. The plaintiffs sued Partnership for unjust enrichment, claiming that it conferred a benefit on

---

[7] It is not uncommon for equity holders, in addition to providing capital, to contribute to the success of a venture in a way that is framed as a loan, which requires appropriate documentation such as promissory notes and security instruments, if applicable. There is no dispute that in this case, neither Ms. Kabrita, individually or as 274 Atlantic, nor Mr. Verdiquio, treated their respective financial investments as anything other than investments.

14

Partnership through the $2 million of capital used to construct the hotel it owned. The Third District reversed the grant of summary judgment in favor of the plaintiffs and remanded for a judgment in favor of Partnership, finding that plaintiffs had not conferred a direct benefit on Partnership through its loans to Management, even though those funds were used to construct the hotel owned by Partnership.

Similarly, in this case, Mr. Verdiquio conferred a direct benefit on the partnership through his investment —for which he received consideration in the form of his 50% profit interest—but at most conferred only an indirect benefit on 274 Atlantic, although that investment was used to improve the Property owned by 274 Atlantic. To hold otherwise would be to allow every holder of an equity interest to convert their investment in a failed enterprise – whether through partnership, joint venture, or corporation – to a claim for unjust enrichment. 274 Atlantic has not provided any basis upon which this Court should recognize such a claim by Mr. Verdiquio. Because Mr. Verdiquio has no claim against 274 Atlantic, the Verdiquio Claim has a value of zero for purposes of the insolvency analysis.

The Court now turns to the Second Note Guaranty. Both parties agree that the Second Note Guaranty is a contingent liability. "Courts have recognized that a personal guaranty is the classic example of a contingent liability because the guarantor's liability is triggered only if the principal obligor has failed to satisfy its debt." *In re Russo*, 494 B.R. 562, 566 (Bankr. M.D. Fla. 2013).

Although the Second Note Guaranty is a contingent liability, the Court must still value the liability for purposes of determining insolvency. As this

Court wrote in *Romay v. Mediaset (In re Am.-CV Station Group Inc.),* 666 B.R. 395 (Bankr. S.D. Fla. 2024):

> The Eleventh Circuit has set out a framework pursuant to which a contingent liability is to be valued in determining a debtor's insolvency. *Advanced Telecomm.,* 490 F.3d at 1335. The Court is required to estimate "the expected value of a judgment against [the debtor]" and then multiply "that value by the chance that [the debtor] would face such a judgment ...." *Id.* That is, the Court must "calculate the present value of the liability – the expected cost of the liability times the estimated chance of it ever occurring." *Id.*; *see also In re The Heritage Organization, L.L.C.,* 375 B.R. 230, 284 (Bankr. N.D. Tex. 2007) (stating that the "[C]ourt should multiply the face amount of the asset or liability times the probability that the contingency will occur"); *In re Xonics Photochemical, Inc.,* 841 F.2d 198, 200 (7th Cir. 1988) ("To value the contingent liability it is necessary to discount it by the probability that the contingency will occur and the liability will become real.").
>
> It is well established that "a contingent liability cannot be valued at its potential face amount ...." *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.),* 904 F.2d 588, 594 (11th Cir. 1990); *see also Oakes v. Spalding (In re Oakes),* 7 F.3d 234 at *3 (6th Cir. 1993); *Xonics,* 841 F.2d at 200 (contingent liabilities not valued at face amounts, even if no uncertainty about what firm will owe if the contingency materializes). If an expert treats contingent liabilities as certainties, his expert opinion will be invalidated. *Baldi v. Samuel Son & Co., Ltd.,* 548 F.3d 579, 582 (7th Cir. 2008); *see also Bachrach Clothing, Inc. v. Bachrach (In re Bachrach Clothing, Inc.),* 480 B.R. 820, 862 (Bankr. N.D. Ill. 2012) (failure to discount contingent liability discredits expert's valuation). Moreover, the contingent liability must be valued as of the time of the Transfer, based on information available at that time, and not by using improper hindsight. *See Paloian v. LaSalle Bank, N.A.,* 619 F.3d 688, 693 (7th Cir. 2010) ("Hindsight is wonderfully clear, but. ... Hindsight bias is to be fought rather than embraced.").

*Romay,* 666 B.R. at 408-09. When discounting the potential face value of the amount of a contingent liability, if "the chances of it occurring are equal to zero (that is, the liability is costless, or the chances of it happening are negligible)," then the contingent liability should be valued at zero. *See Advanced Telecomm.*

*Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.),* 490 F.3d 1325, 1335 (11th Cir. 2007).

The parties disagree on the value of the Second Note Guaranty. 274 Atlantic argues the Second Note Guaranty should be valued at its full-face value amount of $721,198.43 because the only contingency which needed to occur to trigger 274 Atlantic's liability was the default of the primary obligor, Frozen Wheels, which default occurred prior to the transfer of the Property. 274 Atlantic argues that the contingent liability of 274 Atlantic was established upon Frozen Wheels' default, and that collection against 274 Atlantic was likely based on the Second Mortgage Estoppel Letter being issued after the Deed was recorded.

Conversely, the Trustee counters that whether the underlying debt was in default does not determine how the Second Note Guaranty should be valued; the likelihood of the Trustee seeking to collect on the Second Note Guaranty was so negligible that whatever liability was represented by the Second Note Guaranty should be valued at zero. In support of this argument the Trustee submits that the Second Mortgage Estoppel Letter is irrelevant, as the Trustee only provided the letter because 274 Atlantic continued to contend that the Deed was invalid and that it still owned the Property. The Trustee further points out that demand was never made on 274 Atlantic for payment under the Second Note Guaranty.

Here, the Court finds that the record evidence is undisputed that, at the time the Deed was recorded, the Second Note Guaranty had, at best, only a negligible likelihood of becoming an actual liability. The record evidence is undisputed that, at the time the Deed was recorded, the amount of the Frozen Wheels' debt was $721,198.43. According to 274 Atlantic, the value of the

17

Property at that time the Deed was recorded was approximately $6 million. The Trustee held title to the Property. As such, given that the Frozen Wheels' debt was over-secured by a factor of almost 10, there was simply no realistic possibility that 274 Atlantic would be held liable under the guaranty. Should the Trustee wish to pursue recovery of the Second Note Guaranty, the Trustee could always file an action to foreclose the Second Mortgage.[8]

Alternatively, the Trustee could make demand on 274 Atlantic for payment of the Second Note Guaranty, but 274 Atlantic had no additional assets against which the Trustee could seek recovery, and thus there is no economic reason for the Trustee to do so.[9] 274 Atlantic was a single asset and single purpose entity— the only thing it owned was the Property and holding title to the Property was the only reason why it was formed. After the Deed was recorded, 274 Atlantic had no assets. There would be nothing gained by making such demand—only unrecoverable expense, such as time, effort, distraction, litigation fees, and costs.[10] There was therefore not even a "negligible chance" that the Trustee would pursue 274 Atlantic on the Second Note Guaranty and therefore the probability of it becoming a "real" liability of the company was zero. The Second Note Guaranty must be discounted accordingly. Thus, the Court finds that, at the

---

[8] The Court will not speculate why the Trustee would choose to do this.

[9] The parties dispute whether the Trustee was obligated to look to the Property, or to Frozen Wheels, the primary obligor, before making demand on 274 Atlantic for payment of the Second Note Guaranty. However that ambiguity is irrelevant for purposes of the Court's analysis.

[10] Mr. Gaines stated in the *Declaration of Brian M. Gaines* (ECF #153, Ex. 2) filed in support of summary judgment that he did not intend after the Deed was recorded to seek recovery of the Second Note Guaranty. While this makes sense, as the Court has come to the same conclusion, Mr. Gaines' testimony is self-serving and so the Court gives it only minimal weight in this determination.

time the Deed was recorded, 274 Atlantic's contingent liability arising from the Second Note Guaranty of the Frozen Wheels loan had a value of zero.

### CONCLUSION

274 Atlantic's only asset was the Property. At the time the Deed was recorded, 274 Atlantic's only debts were the guaranty obligations secured by the Property, which were far less than the value of the Property at the time of the transfer.   Thus, at the time the transfer was made, 274 Atlantic was not insolvent.  After the transfer, 274 Atlantic no longer had any assets but the value of its remaining debt was zero. Because after the transfer the value of 274 Atlantic's debts did not exceed the value of its assets, 274 Atlantic was not rendered insolvent when the Deed was recorded. Therefore, 274 Atlantic cannot prevail on its constructive fraudulent transfer claim.

Accordingly, for the foregoing reasons, it is **ORDERED** as follows:

1.      The Trustee's Cross-Motion is **GRANTED**.

2.      274 Atlantic's Motion is **DENIED**.

2.      The Trustee is directed to submit a final judgment consistent with this Order.

#     #     #

Copy to:
Eric D. Jacobs, Esq.
Benjamin H. Brodsky, Esq.

*Attorney Brodsky  is directed to serve a copy of this Order on interested parties who do not receive service by CM / ECF, and file a proof of such service within two (2) business days from entry of the Order.*

# EXHIBIT 2



**ORDERED in the Southern District of Florida on July 28, 2025.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

Laurel M. Isicoff, Judge
United States Bankruptcy Court

| | |
|---|---|
| In re: | Case No. 22-14810-LMI |
| 274 ATLANTIC ISLES, LLC, | Chapter 11 |
| Debtor. | |

_____/

| | |
|---|---|
| ERIC R. SCHWARTZ, as Trustee UTA dated 3/4/2019, | Adv. Pro. No.: 22-01199-LMI |
| Plaintiff, | |
| v. | |
| ISAAC HALWANI; GISELLE HALWANI; 274 ATLANTIC ISLES, LLC, a Delaware Limited Liability Company; John Doe; and Jane Doe, unknown parties in possession, if any, | |
| Defendants. | |

_____/

### FINAL JUDGMENT AGAINST
### DEFENDANT/COUNTERCLAIM-PLAINTIFF 274 ATLANTIC ISLES, LLC

**THIS CAUSE** came before the Court for hearing on May 13, 2025 on the Cross-Motion

for Summary Judgment [the "Motion," ECF No. 154] filed by Plaintiff/Counterclaim-Defendant

Brian M. Gaines, as Trustee UTA dated 3/4/2019 ("Lender") pursuant to Fed. R. Civ. P. 56, made applicable to this Adversary Proceeding by Fed. R. Bankr. P. 7056. The Court, having reviewed the Motion and the Court file, and having entered a separate Order granting the Motion [ECF No. 167], for the reasons stated in such Order,

ORDERS and ADJUDGES as follows:

1.      Final judgment is entered in favor of the Lender and against 274 Atlantic Isles, LLC ("274 LLC") as to Count X in 274 LLC's Fourth Amended Counterclaim and Third-Party Complaint (the "Counterclaim") [ECF No. 93].

2.      The Notice of Lis Pendens recorded by 274 LLC against the real property at issue in this case, 274 Atlantic Avenue, Sunny Isles Beach, Florida, 33160, in the Official Records of Miami-Dade County, Florida at Book 32699, Page 1421 is hereby dissolved and discharged.

3.      The Court reserves jurisdiction to enter any further orders or take any other actions that may be necessary in connection with the Counterclaim, including but not limited to considering attorneys' fees to the extent allowed by law or contract, and to tax costs incurred by the Lender pursuant to Fed. R. Bankr. P. 7054 and Local Rule 7054.

4.      The last known address of 274 LLC is 274 Atlantic Isles, LLC, 274 Atlantic Avenue, Sunny Isles Beach, Florida 33160.

5.      The Lender's address is Brian M. Gaines, as Trustee UTA dated 3/4/2019, 2412 Barcelona Drive, Fort Lauderdale, Florida 33301

# # #

Submitted by and copy to:

Benjamin H. Brodsky, Esq.
**BRODSKY FOTIU-WOJTOWICZ, PLLC**
*Counsel for the Lender*
44 W. Flagler Street, Suite 2200

2

Miami, Florida 33130
Telephone: 305.503.5054
Email: bbrodsky@bfwlegal.com

[Attorney Brodsky is directed to serve a conformed copy of this Order on all parties in interest and file a certificate of service within 3 days of entry of this Order]